33 F.3d 58
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Tom CHIVERS, Plaintiff-Appellant,
v.
The NORTH SLOPE BOROUGH; James Christensen; Darlene
Erickson; Roger Bleth, Defendants-Appellees.
 No. 93-35307.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 5, 1994.
Decided Aug. 18, 1994.
 
 Before: PREGERSON, CANBY, and BOOCHEVER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Tom Chivers, a former police officer with the North Slope Borough's Department of Public Safety, was fired for false statements he made in an affidavit. He sued the Borough and various Borough employees under 42 U.S.C. Secs. 1983 and 1985 (1988) and several state and federal criminal statutes. He now appeals the district court's dismissal and grant of summary judgment to the defendants. We AFFIRM.
 
 FACTS AND PROCEDURE
 
 3
 Tom Chivers was a corporal in the North Slope Borough Department of Public Safety in Alaska. On October 29, 1990, Chivers signed an affidavit for the plaintiffs in Ruffino v. North Slope Borough, No. 92-36866 (9th Cir. May 23, 1994), a class action brought by Borough police officers to recover overtime wages under the Fair Labor Standards Act, 29 U.S.C. Secs. 201-219 (1988).
 
 
 4
 Chivers' affidavit stated that he heard a conversation on July 13, 1988[1] in the village division office at the Department of Public Safety ("Department") in Barrow, Alaska. According to the affidavit, Corporal Roger Bleth and Sargeant John Aho discussed placing another officer on administrative leave without pay until the end of that pay period, to avoid having to pay overtime. Chivers stated that he protested the placement, and Bleth told him that was what Bleth was told to do. Chivers also stated that at a Department meeting a Borough attorney said that the Borough's policy in the Ruffino litigation would be not to cooperate in discovery and to drag the litigation out as long as possible. [ER tab CR 49 pp. 2-3]
 
 
 5
 The affidavit was potentially useful to the Ruffino plaintiffs and harmful to the Borough's defense, and was filed in federal court by the Ruffino plaintiffs. Chivers himself had no claim for overtime and was not a plaintiff in Ruffino, which was eventually decided with no reliance on or reference to the affidavit. [Red Br. p. 2]
 
 
 6
 After they reviewed copies of the affidavit, Bleth and Darlene Erickson, a Deputy Borough Attorney, each filed a departmental complaint against Chivers alleging employee misconduct, based on what they believed to be false statements in the affidavit. Under the Department's rules, an internal investigation followed. James Christensen, the director of the Department, wrote Chivers advising him of his intent to terminate Chivers, and informing him of his right to a hearing. [SER CR 30 tab 15]
 
 
 7
 At the hearing, Chivers presented evidence and witnesses on his behalf. Following the hearing, Christensen wrote Chivers informing him of his final decision to terminate Chivers. Christensen cited Chivers' "numerous false statements" in the affidavit, as well as earlier misconduct. Christensen advised Chivers of his right to appeal the decision. [Id. at tab 20] Chivers initiated an appeal to the Personnel Board of the Mayor's office, and then withdrew it. [Id. at tab 1 p. 7] Chivers then sought redress with the Alaska State Labor Board, but abandoned that action as well.
 
 
 8
 On November 1, 1991, Chivers filed a complaint under 42 U.S.C. Secs. 1983 and 1985 in the district court in Anchorage, naming as defendants the Borough, Christensen, Erickson, and Bleth, as well as other defendants not named in this appeal. The complaint alleged that the defendants conspired to injure Chivers' property interest in continued employment by firing him in retaliation for his "supporting and testifying in the Ruffino lawsuit." Chivers also alleged that the defendants deprived him of his rights to due process, freedom of speech and to petition the government. He also stated claims under 18 U.S.C. Secs. 1512 and 1513 (1988), federal criminal statutes prohibiting witness tampering and retaliation, and Alaska Stat. 11.76.110 (1989), which makes interference with another's constitutional rights a misdemeanor.
 
 
 9
 On March 15, 1993, the district court dismissed Chivers' claims based on the federal and state criminal statutes, and granted summary judgment against Chivers on his claims under 42 U.S.C. Secs. 1983 and 1985. Chivers appeals.
 
 DISCUSSION
 
 10
 We review de novo the district court's grant of summary judgment, Jones v. Union Pac. R.R. Co., 968 F.2d 937, 940 (9th Cir.1992), and its dismissal for failure to state a claim, Oscar v. University Students Co-Operative Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, 113 S.Ct. 655 (1992). We view the evidence on summary judgment in the light most favorable to Chivers. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 
 11
 I. SUMMARY JUDGMENT ON THE Sec. 1985(2) CLAIM
 
 
 12
 The district court granted summary judgment to the defendants on Chivers' claims under 42 U.S.C. Sec. 1985(2), which prohibits conspiracies "to deter, by force, intimidation, or threat, any party or witness in any court of the United States ... from testifying to any matter pending therein, freely, fully, and truthfully." Chivers had claimed that the defendants conspired to retaliate against him for his testimony (in the affidavit) in the Ruffino litigation.
 
 
 13
 It is undisputed that in this circuit "[a]llegations of witness intimidation under Sec. 1985(2) will not suffice for a cause of action unless it can be shown the litigant was hampered in being able to present an effective case." David v. United States, 820 F.2d 1038, 1040 (9th Cir.1987) (emphasis in original). Because Chivers was not a party to the Ruffino litigation, he can show no injury under Sec. 1985(2). Id. Chivers' attempts to argue that David is wrongly decided are without merit.
 
 
 14
 The district court properly granted summary judgment against Chivers on his Sec. 1985(2) claim.
 
 II. QUALIFIED IMMUNITY
 
 15
 The district court granted summary judgment to the individual defendants, Bleth, Erickson, and Christensen, on the issue of qualified immunity. The individual defendants are entitled to qualified immunity if, in the light of clearly established principles governing their conduct at the time of their actions, they could reasonably have believed that their conduct was lawful. Mendoza v. Block, No. 92-56225, slip op. 5619, 5626 (9th Cir. May 31, 1994) (as amended).
 
 
 16
 The court found that Bleth and Erickson were not final decisionmakers, could not have known that their actions violated clearly established constitutional rights, and that their filing of complaints was privileged. The court found that as the final decisionmaker, Christensen did not violate a clearly established constitutional right by firing Chivers for making recklessly false statements on a matter of public concern.
 
 A. Bleth and Erickson
 
 17
 Bleth and Erickson each filed a departmental complaint against Chivers after reading his affidavit and determining that some of the statements it contained were false. Chivers does not allege any other acts by Bleth or Erickson.
 
 
 18
 The Department's administrative manual requires any member of the Department to file a complaint when there is reason to believe that another member has violated a Department rule. [SER tab 37] Work Rule W1.1.b.2 requires that Department members be truthful at all times, and Bleth and Erickson believed the affidavit violated the rule. Chivers presents no facts to show that the filing of the complaints in itself violates any clearly established law.
 
 
 19
 Instead, he argues that a material question of fact remains whether Erickson and Bleth filed the complaints to punish him for exercising his First Amendment right to make the statements in the affidavit. First, Chivers has alleged no facts showing any such motivation on Bleth or Erickson's part. Second, even if he had, as explained below it did not violate Chivers' First Amendment rights to fire him for his false statements in the affidavit. It was proper to grant summary judgment to Erickson and Bleth on the ground of qualified immunity.
 
 B. Christensen
 
 20
 Christensen presided at Chivers' termination hearing, and made the final decision to terminate Chivers in large part because Chivers "made a false sworn statement with ... reckless disregard for the truth." [SER tab 20 p. 8]
 
 
 21
 At the time of Chivers' termination in April of 1991, it was clearly established that a public employee cannot be fired for exercising the First Amendment right to speak on matters of public concern, "absent proof of false statements knowingly or recklessly made by him." Pickering v. Board of Educ., 391 U.S. 563, 574 (1968). Christensen could reasonably have believed that he acted lawfully in firing Chivers for his false statements in the affidavit, which were at least reckless. Chivers was confronted with travel records and other evidence that show Chivers could not possibly have overheard the conversation he swore to in his affidavit. Yet he continued to assert, even on appeal and without any supporting evidence, that his statements were true [Blue Br. p. 12 n. 8] In light of the ample evidence that the statements were false, Christensen could in good faith have believed that Chivers' statements were recklessly or knowingly false. See Neubauer v. City of McAllen, 766 F.2d 1567, 1579-80 (5th Cir.1985) (where there was substantial evidence that a statement was false, the testifying police officer had information reflecting that falsity, and officer continued to assert its truth, jury could find that employer believed false statement was knowingly made); Swineford v. Snyder County, 15 F.3d 1258, 1274 (3d Cir.1994) ("prolonged failure to authenticate allegations ... approaches reckless indifference to their veracity"). Even viewing the evidence in the light most favorable to Chivers, his sworn statement was at least recklessly false.
 
 
 22
 Because Christensen could reasonably have believed that, in light of clearly established legal principles, he acted lawfully in firing Chivers for the recklessly false statements in the affidavit, we affirm the district court's conclusion that Christensen is entitled to qualified immunity.
 
 III. MUNICIPAL LIABILITY
 
 23
 Chivers alleged that the Borough was liable for Christensen's actions in firing Chivers pursuant to the Borough's Work Rule W1.1.b.2, which states "TRUTHFULNESS: Members of the Department shall be truthful at all times, whether in their spoken or written word." [Blue Br. p. 8] The district court granted summary judgment for the Borough, because it had not ratified Christensen's decision.
 
 
 24
 The Borough cannot be held liable for Christensen's decision under a theory of respondeat superior. Oklahoma v. Tuttle, 471 U.S. 808, 818 (1985). The Borough is liable only if the Personnel Board, as the final authority on personnel decisions, approved Christensen's firing of Chivers and the basis for it. St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). Here, because Chivers abandoned his appeal to the Personnel Board, Christensen's decision was never ratified by the Borough.
 
 
 25
 Further, the Borough "cannot be held liable under Sec. 1983 unless [Chivers] proved the existence of an unconstitutional municipal policy." Id. at 128. Chivers has proven nothing of the kind. He presented no evidence that the Borough has a policy of firing individuals who negligently make false statements about matters of public concern, and his attempt to convert the work rule that employees must be truthful at all times into such a policy is unavailing.
 
 
 26
 The district court properly granted summary judgment to the Borough.
 
 IV. STATE LAW CAUSES OF ACTION
 
 27
 The district court dismissed Chivers' claims under the federal statutes proscribing witness intimidation and retaliation, because there is no private cause of action under those statutes. Chivers does not appeal the dismissal of the claims under the federal statutes, but he continues to assert that he can bring an action under Alaska Stat. Sec. 11.76.110, which makes it a misdemeanor to interfere with another's constitutional rights.
 
 
 28
 Although Chivers' complaint did not assert any tort claims, he argues on appeal that he intended to allege a tort cause of action for discharge in violation of the public policy embodied in Sec. 11.76.110. Even if he had properly included it in his complaint, however, dismissal of such a claim would have been appropriate. There is no tort remedy under Alaska law for unconstitutional termination. See Great W. Sav. Bank v. George W. Easley Co., 778 P.2d 569, 581 (Alaska 1989) (obligation of fair dealing sounds in contract, not in tort); State v. Haley, 687 P.2d 305, 318 (unconstitutional firing by state amounts to unfair dealing and gives rise to contract remedies).
 
 
 29
 The district court properly dismissed Chivers' state law claim.
 
 V. ATTORNEYS FEES
 
 30
 The appellees have requested attorney fees on appeal pursuant to 42 U.S.C. Sec. 1988 (1988). Attorney fees may be awarded to prevailing civil rights defendants only if the action is " 'meritless, in the sense it is groundless or without foundation,' " and the same standard applies on appeal. Elks Nat'l Found. v. Weber, 942 F.2d 1480, 1485 (9th Cir.1991) (quoting Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 202 (9th Cir.1988), cert. denied, 490 U.S. 1081 (1989)). We do not find that the appeal is groundless or without foundation, and therefore deny attorney fees on appeal.
 
 CONCLUSION
 
 31
 The district court's dismissal and grant of summary judgment are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The affidavit says July 13, 1989; this is a typographical error